IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY GRANT, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>LM GENERAL INSURANCE COMPANY,<br><br>        Defendant. | Civil Action – Class Action<br><br>Case No. 2:23-cv-03026-CFK<br><br>Hon. Chad F. Kenney |

**FIRST AMENDED CLASS ACTION COMPLAINT**[1]

Representative Plaintiff Timothy Grant, individually and on behalf of all others similarly situated ("Plaintiff"), hereby files this First Amended Class Action Complaint against LM General Insurance Company ("Defendant" or "LM") as a matter of course pursuant to Fed. R. Civ. P. Rule 15(a)(1)(B), and alleges as follows:

**INTRODUCTION**

1. Plaintiff brings this class action on behalf of himself and similarly situated people who have had their uninsured motorist coverage ("UM") and/or under insured motorist coverage ("UIM") claims denied because of the so-called "regular use exclusion."

2. The "regular use exclusion" has been used by insurance companies such as Defendant to deny UM and/or UIM coverage since approximately 1990, upon the effective date of the amendments to the Motor Vehicle Financial Responsibility Law. The regular use exclusion purportedly applies when an insured suffers injuries arising from the use of a motor vehicle that

---

[1] Filed as a matter of course pursuant to F.R.C.P. Rule 15(a)(1)(B).

he/she regularly uses, does not own, and the motor vehicle being used is not insured for UM or UIM coverage under the policy.

3. The Pennsylvania Superior Court has ruled that the regular use exclusion conflicts with the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), thus it is unenforceable.

4. Despite this, Defendant has in the past and continues to deny UM and/or UIM claims in Pennsylvania based on the regular use exclusion, and refuses to reverse prior denials based on its regular use exclusion.

**PARTIES**

5. Timothy Grant is an adult individual who resides at 1024 Duss Avenue, Ambridge, PA 15003.

6. LM General Insurance Company is an insurance company with its headquarters at 175 Berkeley St., Garlock 10B, Boston, MA 02117.

7. At all relevant times, LM was engaged in the practices of providing and/or underwriting motor vehicle liability policies in Pennsylvania, including UM and UIM coverage.

**FACTS**

8. Plaintiff was injured in an auto accident on August 10, 2021.

9. The accident was caused by an underinsured driver.

10. The limits of the underinsured driver's policy of insurance were insufficient to compensate Plaintiff for injuries he sustained as a result of the accident.

11. At the time of the accident, Plaintiff was driving a dump truck owned by his employer in the scope of his employment, which he used on a regular basis.

12. Plaintiff had a motor vehicle insurance policy with LM, Policy Number AOS28819826470, which was in effect at the time of the aforesaid accident (the "LM Policy"). The LM Policy includes UIM benefits.

13. The LM Policy states in part:

> UNDERINSURED MOTORISTS COVERAGE - PENNSYLVANIA (NON-STACKED)
> …
> INSURING AGREEMENT
> A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":
> 1. Sustained by an "insured"; and
> 2. Caused by an accident.
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".
> …
> B. "Insured" as used in this endorsement means:
> 1. You or any "family member".

14. Plaintiff made a claim for UIM benefits under the aforesaid LM Policy.

15. LM denied coverage for Plaintiff's UIM claim on the basis of Exclusion A.2. of the LM insurance policy, which states:

> A. We do not provide Underinsured Motorists Coverage for "bodily injury" sustained:
> …
> 2. By an "insured", as defined in this endorsement, while using, "occupying", or when struck by, any non-owned motor vehicle that is furnished or made available for your regular use, or the regular use of a "family member", which is not insured for Underinsured Motorists Coverage under this policy. This includes a trailer of any type used with that vehicle.
>
> (hereafter "LM's Regular Use Exclusion")

16. Absent LM's Regular Use Exclusion, Plaintiff would have been entitled to UIM benefits from LM pursuant to the LM Policy and 75 Pa.C.S. §1731(c).

17. Prior to the time of LM's denial, the Pennsylvania Superior Court found that the general use exclusion conflicts with Section 1731(c) of the MVFRL, and is therefore, unenforceable. *Rush v. Erie Ins. Exchange*, 265 A.3d 794 (Pa. Super. Ct. 2021).

18. *Rush* is currently on appeal to the Supreme Court of Pennsylvania. *Rush* is valid precedential Pennsylvania common law. *Jones v. Erie Insurance Exchange*, 282 A.3d 1139 (Pa. Super. Ct. 2022); *Johnson v. Progressive Advanced Insurance Company*, 587 F.Supp.3d 277 (2022); *In re Townsend's Estate*, 36 A.2d 438, 441 (Pa. 1944) (holding that there is "no right to ignore the latest decision of the Superior Court of this Commonwealth [e.g., *Rush*] on an issue which has been squarely decided. Until that decision should be overruled by the Superior Court itself or overruled by the Supreme Court, **it is still the law of this Commonwealth**, regardless of the decisions of any other court in the country, including the Federal Courts.").[2]

19. LM was aware of the *Rush* case at the time it wrongly denied Plaintiff's claim.

20. Thereafter, on two (2) separate occasions, Plaintiff's attorneys requested a reconsideration of LM's decision to deny UIM coverage, on the basis that *Rush* is valid common law and, therefore, LM's regular use exclusion is unenforceable in Pennsylvania.

21. LM, through its attorneys, denied both requests.

22. Despite knowing of the existence of the *Rush* decision and that it is valid common law, LM has continued to use the general use exclusion to deny UM and UIM benefits to its insureds, and has failed to revoke its previous denials of UM and UIM benefit claims, based on an unenforceable regular use exclusion.

---

[2] Even if *Rush* is overturned by the Pennsylvania Supreme Court, it is valid precedential common law and was at the time LM made its decision to deny Plaintiff's and Class Members' claims.

23. Upon information and belief, LM General Insurance Company began utilizing Regular Use Exclusions in approximately 1990, upon the effective date of the amendments to the Motor Vehicle Financial Responsibility Law. The exact date will be obtained in discovery.

24. Upon information and belief, LM General Insurance Company began utilizing Regular Use Exclusions in approximately 1990, upon the effective date of the amendments to the Motor Vehicle Financial Responsibility Law, but failed to decrease premiums, and began denying claims based on the regular use exclusion even though there was no decrease in premiums.

25. On account of its invalid regular use exclusion, LM General Insurance Company has failed to notify UM and UIM claimants that their previously denied claims, will be reversed, reopened, and/or are subject to investigation and monitoring.

26. In so doing, LM General Insurance Company is deliberately subordinating its duty to its insureds and recklessly shirking its duty to follow the law – all in the name of earning more profits. In this connection, it attempts to feign that it is negligently or innocently incorrectly interpreting its policy language or the letter of the law and is concealing full disclosure to its insureds, determining that the risk to pay any bad faith claim(s) or to defend against any governmental investigation would still net more profit than to honor the Superior Court's decision in *Rush*.

## **CLASS ALLEGATIONS**

27. Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Fed.R.Civ.P. 23(a) and 23(b)(1), (2), and (3).

28. Plaintiff proposes a Class defined as: All people who were insured under a LM General Insurance Company motor vehicle insurance policy in Pennsylvania and made a claim(s), during the Applicable Statute of Limitations, to LM General Insurance Company for bodily injury

uninsured and/or underinsured benefits but their claims were denied or caused to be denied by LM General and/or its agents based on a regular use exclusion.

29. Subject to amendment, the relevant period is as follows:

- <u>Breach of Contract Claim</u> – the date when LM General Insurance Company started using a Regular Use Exclusion (in approximately 1990, upon the effective date of the amendments to the Motor Vehicle Financial Responsibility Law) through Class Certification, or alternatively, from October 22, 2017 (four years prior to the *Rush* decision) through Class Certification; and

- <u>Bad Faith Claim</u> - the date when LM General Insurance Company started using a Regular Use Exclusion (in approximately 1990, upon the effective date of the amendments to the Motor Vehicle Financial Responsibility Law) through Class Certification, or alternatively, from October 22, 2019 (two years prior to the *Rush* decision) through Class Certification.

30. Statute of limitations periods are computed from the time the cause of action accrued, which is when the plaintiff could have first maintained the action to a successful conclusion.[3] At a minimum, Plaintiff and Class Members could have first maintained their action to a successful conclusion when the Superior Court decided *Rush* on October 22, 2021.

31. Most Class Members' are unaware that their previously denied claim should be reversed on account of the change in the law because LM General Insurance Company is not notifying them of the favorable affect the Rush decision has on its prior denials, deliberately concealing this information to avoid paying valid claims.

32. Under Pennsylvania's discovery rule, a statute of limitations is tolled until the complaining party knows or reasonably should know that they have been injured and that his injury has been caused by another party's conduct.[4] Again, Plaintiff and Class Members could not have known they had been injured (i.e., that LM's denial was a violation of Pennsylvania law), until the

---

[3] *City of Philadelphia v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112, 121 (3d Cir. 1993).
[4] *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014).

*Rush* decision. Therefore, Plaintiff and Class Members' statutes of limitations began to run on October 22, 2021.

33. Plaintiff reserves the right to amend this class definition, including adding classes and subclasses, and the class period, after discovery.

34. The class is so numerous that joinder of all Class Members is impractical. The exact number of class members is unknown to Plaintiffs and their counsel but can be determined from Defendant's business records, including a review of individual customer files.[5]

35. The size of the class, and any trial, would be readily manageable.

36. There are questions of law or fact common to the class that predominate. These include, though are not limited to, the following:

> (a) Whether LM rejected the class members' UM and/or UIM benefits claims based on the regular use exclusion and, if so, the number of such denials and during which span of time; and whether LM rejection was systemic and constituted a breach of contract and/or constituted bad faith; and,
>
> (b) Whether, when, and whyLM sent any communication to insureds whom it previously denied claims on account of the regular use exclusion to inform them of the Rush decision and the impact of the Rush decision on its previously denied claim;

37. Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the class.

---

[5] The Third Circuit has held that "[t]he size of a potential class and the need to review individual files to identify its members are not reasons to deny class certification" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 170- 171 (3d. Cir. 2015). "To hold otherwise would seriously undermine the purpose of a Rule 23(b)(3) class to aggregate and vindicate meritorious individual claims in an efficient manner." *Id.* Ascertainability does not require that a plaintiff must be able to identify all class members at class certification—instead, a plaintiff need only show that "class members *can* be identified." *Id.* at 163.

38. Plaintiff and the Class Members have substantive claims that are similar, if not identical, in all material respects, and will require proof of the same kind and application of the same laws.

39. Plaintiff's claims are typical of those of the class. All are based on the same factual and/or legal theories. Plaintiff and Class Members all suffered damages as a result of LM's denial of their UM and/or UIM claims based on LM's Regular Use Exclusion.

40. Plaintiff will fairly and adequately represent and protect the interests of the class.

41. Plaintiff is represented by competent and experienced counsel.

42. Plaintiff has no conflict with class members in the maintenance of this action, and his respective claims are identical to or at least typical of claims of the Class Members.

43. Because most Class Members either do not know that their rights have been violated, and/or could not economically justify the effort and expense required to litigate their individual claims or have little interest in or ability to prosecute an individual action due to the complexity of the issues involved in this litigation, a class action is the most efficient proceeding.

44. A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all Class Members is impracticable. This class action represents the most fair and efficient method of adjudicating this controversy.

45. There are no unusual legal or factual issues that would cause management problems not normally and routinely handled in class actions.

46. The questions of law and fact common to the class predominate over any questions affecting only individual members.

47. If each of the Class Members were forced to bring individual suits, such suits would burden judicial resources and would create the risk of multiple inconsistent results for similarly

situated parties. A class action will serve the goals of judicial economy and ensure uniformity of decision.

### Count One
### Breach of Contract

48. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

49. Plaintiff's and Class Members' motor vehicle liability policies with LM are contracts.

50. Plaintiffs and Class Members made claims for UM and/or UIM benefits under their motor vehicle insurance policies with LM.

51. Defendant denied Plaintiff's and the Class Members' claims for UM and/or UIM benefits based on LM's Regular Use Exclusion, which the Pennsylvania Superior Court has held to be unenforceable.

52. Plaintiffs and Class Members were entitled to have their claims for UM and/or UIM benefits granted and/or previously improvidently denied claim(s) reversed, based on standardized insurance policies with LM.

53. By systematically and uniformly denying Plaintiff's and Class Members' claims, and refusing to reverse denials of their claims, LM breached its contracts with them, and breached its implied covenant of good faith and fair dealing, resulting in monetary damages.

### Count Two
### Statutory Bad Faith – 42 Pa.C.S. §8371

54. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

55. At all relevant times, LM had an express or implied duty to act reasonably towards its it's UM and UIM claimants.

56. At all relevant times, LM had an express or implied duty of good faith and fair dealing.

57. As a matter of uniform and standardized policy, practice, and procedure, at all relevant times, LM did not have a reasonable basis to deny Plaintiff's and Class Members' UM and/or UIM

claims based on a regular use exclusion because the Superior Court of Pennsylvania has held that such an exclusion is unenforceable in Pennsylvania.

58. LM knew of and recklessly disregarded its lack of a reasonable basis to deny these valid claims for Plaintiff and Class Members.

59. At the time of denial of Plaintiff's claim, LM and its counsel knew of the *Rush* decision, and Plaintiff's counsel informed LM that *Rush* is the controlling Pennsylvania law.

60. At the time of denial of Plaintiff's claim, LM and its counsel also knew of *Jones v. Erie Insurance Exchange*, 282 A.3d 1139 (Pa. Super. Ct. 2022), and *Johnson v. Progressive Advanced Insurance Company*, 587 F.Supp.3d 277 (2022).

61. At the time of denial of Plaintiff's claim, LM and its counsel knew of *In re Townsend's Estate*, 36 A.2d 438, 441 (Pa. 1944) (holding that there is "no right to ignore the latest decision of the Superior Court of this Commonwealth [e.g., *Rush*] on an issue which has been squarely decided. Until that decision should be overruled by the Superior Court itself or overruled by the Supreme Court, it is still the law of this Commonwealth, regardless of the decisions of any other court in the country, including the Federal Courts.").

62. Notwithstanding the fact that *Rush* is the law of this Commonwealth and has been the law since October 22, 2021, LM made a calculated cost-benefit determination to weigh the costs:

- To pay (and defend) a bad faith claim and/or any regulatory investigation/citation and to notify claimants of the favorable change in the law/policy; and,

- To pay valid claims which were improvidently denied on the basis of the unenforceable regular use exclusions.

63. LM's motive – *Profit* – in disregard for its statutory and contractual obligations.

64. Despite Plaintiff's efforts to implore LM to provide coverage, LM continued to deny Plaintiff's and Class Member's UM and/or UIM claims based on LM's regular use exclusion, and

failed to reverse its previous denials of UM and UIM claims which it denied based on the unenforceable exclusion.

65. Upon information and belief, LM General Insurance Company has failed to notify UM and UIM claimants that their claims are re-opened and subject to investigation and monitoring, in violation of 42 Pa.C.S §8371.

66. Upon information and belief, LM General Insurance Company began utilizing Regular Use Exclusions to deny UM and UIM claims in approximately 1990, upon the effective date of the amendments to the Motor Vehicle Financial Responsibility Law, but failed to decrease premiums to make up for the addition of this exclusion, in violation of 42 Pa.C.S § 8371.

67. LM's systematic denials of the UM and UIM claims were made in bad faith, in an unreasonable effort to contest such valid claims with the intent to generate more profit, in violation of 42 Pa.C.S § 8371.

68. A reasonable investigation would have determined that, on the basis of a change in the law, LM must provide coverage for the UM and UIM claims.

69. LM breached its duty to act reasonably towards its UM and UIM claimants and breached it duty of good faith and fair dealing, in violation of 42 Pa.C.S §8371.

70. At all relevant times, LM's actions and inactions toward Plaintiff and Class Members constituted bad faith, in violation of 42 Pa.C.S §8371.

WHEREFORE, Plaintiff requests that this Honorable Court:

A. Certify this claim to proceed as a class action;
B. Award compensatory damages for the injuries suffered by Plaintiff and Class Members for all Counts;

C. Award attorneys' fees, costs, punitive damages, and interest from the date the UM/UIM claims were made (equal to the prime interest rate plus 3%) for LM's bad faith conduct, pursuant to 42 Pa.C.S § 8371;[6]

D. Preliminarily enjoining Defendant from denying claims (and reversing improvidently denied claims) on account of the regular use exclusion; and,

E. Award any other equitable and monetary relief as permitted by law or contract which this Honorable Court deems just and proper.

Respectfully submitted,

SHENKAN INJURY LAWYERS, LLC.
/s/ Richard Shenkan
Richard Shenkan

*Co-Counsel for Plaintiffs*

STRASSBURGER McKENNA GUTNICK & GEFSKY
David A. Strassburger
Lydia A. Gorba

*Co-Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was sent to all counsel of record on the date of filing via the Court's electronic court filing system (ECF).

SHENKAN INJURY LAWYERS, LLC.
*/s/ Richard Shenkan*
Richard Shenkan

---

[6] *See Trotman v. Mecchella,* 618 A.2d 982, 985 (Pa. Super. Ct. 1992) and *Anderson v. Nationwide Insurance Enterprise, et al.*, 187 F.Supp. 2d 447 (2002) ("Under Pennsylvania law, the question of punitive damages is usually determined by the trier of fact, and the Court is to decide the issue only when no reasonable inference from the facts alleged supports a punitive award.").